OPINION
{¶ 1} Defendant-appellant Michael Kirkman appeals his conviction entered by the Stark County Court of Common Pleas, on one count of intimidation of a witness, in violation of R.C. 2921.04(B), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On February 20, 2004, the Stark County Grand Jury indicted appellant on one count of intimidation of a witness, in violation of R.C.2921.04(B), and one count of aggravating menacing, in violation of R.C.2903.21(A). Appellant appeared before the trial court with court appointed counsel at his arraignment on February 27, 2004, and entered a plea of not guilty to the indictment. The matter proceeded to jury trial on April 22, 2004. The following evidence was adduced at trial.
 {¶ 3} William Klutts and Amanda Paxton, his girlfriend, were living in the basement of a residence on 9th Street in Canton, Ohio, in April, 2003. The property was owned by Alison Harrison, appellant's then girlfriend. Appellant was also living at the residence at that time. Appellant believed Klutts had stolen $75 from him, and, as a result, Klutts and Paxton were instructed to leave the residence. As Klutts was attempting to gather his belongings, an altercation ensued between Klutts and appellant. Although Paxton was ultimately allowed to return to the residence to retrieve her belongings, appellant would not permit Klutts to retrieve his property. Klutts described the altercation with appellant as "a pretty heated dispute." Tr. at 100.
 {¶ 4} Prior to this, on March 15, 2003, a fire occurred at a residence located at 1509 16th Street, NE, Canton, Ohio. The Canton City Fire Marshal suspected arson, and, after some initial investigation, developed Lemoine Brown as a suspect. The home at which the fire occurred belonged to Brown's ex-girlfriend. Brown was a lifelong friend of Klutts. Appellant became acquainted with Brown through Klutts. Appellant developed his own suspicions about Brown's involvement in the fire, and contacted David Akers, a fire investigator and inspector with the City of Canton Fire Department, about two months after the fire. After his conversation with appellant, Akers spoke with Klutts and Paxton. Klutts permitted the fire marshals to tap his telephone to record his conversations with Brown. Brown was ultimately arrested and charged with one count of arson. Klutts was subpoenaed to testify before the Stark County Grand Jury in the matter. Klutts was served with the subpoena on July 10, 2003.
 {¶ 5} Around July 19, 2003, Klutts spoke with a friend, and as a result of that conversation, telephoned appellant. During the conversation, appellant threatened Klutts, saying, "I don't know when, I don't where, but you got something coming." Tr. at 102. Appellant did not mention Lemoine Brown during this conversation.
 {¶ 6} A few days later on July 21, 2003, Klutts was walking on 12th Street, returning to his mother's apartment on Oak Avenue, when he saw appellant driving in the opposite direction. Appellant turned his vehicle around, and revved the engine, and drove straight toward Klutts. Klutts ran to a nearby house in order to avoid being struck by appellant's vehicle. Klutts continued to run while appellant followed him in the vehicle. Klutts ran behind houses, hiding as he went, and eventually made his way to the backyard of his mother's apartment building. As Klutts was hiding, he heard appellant yelling, "Where are you, where are you?" Klutts was able to run into the apartment building. Once inside, Klutts could hear appellant threatening to kill him and his family. Klutts grabbed a 2x4 and went onto the front porch. Appellant continued to yell at Klutts, accusing him of "trying to get me on an arson case, you're lying on me." Tr. at 116. Klutts instructed appellant to leave him alone, but appellant continued to curse and threaten Klutts. Appellant also continued to accuse Klutts of trying to get him in the case with Lemoine Brown. When appellant again threatened to hurt Klutts and his family, Klutts left the front porch and went after appellant with the 2x4. Klutts' girlfriend convinced him not to go after appellant. However, appellant stopped his vehicle, put it in reverse, and tried to run over Klutts. After avoiding being hit, Klutts telephoned the fire marshals.
 {¶ 7} Amanda Paxton testified on July 21, 2003, she had received a telephone call from Klutts, informing her he was on his way back to his mother's apartment. Approximately twenty minutes later, Paxton heard Klutts screaming at someone. Paxton opened the front door, and saw Klutts chasing appellant's vehicle with a 2x4. She instructed Klutts to return to the house. Klutts dropped the 2x4 and turned toward the house. Thereafter, Paxton saw appellant put his car in reverse, and try to run over Klutts. After Klutts was safely inside the apartment building, Paxton approached appellant and asked him what the problem was. Appellant, who had a hammer in his hand, was ranting and raving about Klutts putting Brown in jail on the arson case. Paxton asked appellant to leave, to which he replied he "would not hesitate to hit a pregnant bitch in a minute." Tr. at 154-155. Appellant's girlfriend, who was in the vehicle, told appellant to leave Paxton alone. Paxton returned to the apartment and appellant drove away.
 {¶ 8} Timothy Macrides, who lived in the same apartment building as Klutts and his mother, was in his apartment on July 21, 2003, when he heard a commotion. Once outside, Macrides observed appellant "driving down the road swinging a hammer and acting crazy" as he tried to run over Klutts and Paxton. Macrides heard appellant yelling, "I'll kill you, you will never make it to court." Tr. at 224. Macrides heard appellant repeat this threat four or five times. He also heard appellant mention a fire and someone by the name of Brown.
 {¶ 9} After hearing all the evidence and deliberations, the jury found appellant guilty of one count of intimidation of a witness and one count of aggravating menacing. The trial court sentenced him to two years incarceration on the intimidation count, and 180 days on the aggravating menacing count. The trial court ordered the terms to be served concurrently.
 {¶ 10} It is from the conviction of intimidation of a witness appellant appeals, raising the following assignments of error:
 {¶ 11} "I. Appellant's conviction for intimidation of a witness is based upon insufficient evidence.
 {¶ 12} "II. Appellant's conviction for intimidating of a witness is against the manifest weight of the evidence."
 I, II {¶ 13} Because appellant's assignments of error are interrelated, we shall address them together. In his first assignment of error, appellant challenges the sufficiency of the evidence, asserting the State failed to prove appellant knew Klutts was a witness in the Brown case and the July 21, 2003 confrontation occurred because of such knowledge. In his second assignment of error, appellant challenges his conviction as against the manifest weight of the evidence, maintaining the State's main witness, William Klutts, was not credible.
 {¶ 14} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: AAn appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 15} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 16} Appellant was convicted of intimidation of a witness, in violation of R.C. 2921.04(B), which provides:
 {¶ 17} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 18} As stated supra, appellant contends his convictions for intimidation of a witness was based upon insufficient evidence as the State failed to prove appellant knew Klutts was a witness in the Brown case. Appellant maintains the evidence did not establish he was trying to prevent Klutts from testifying in Brown's case, but rather showed appellant was still upset over Klutts' stealing from him in April, 2003, and his suspicions Klutts was wrongfully trying to implicate him in the arson. At trial, three of the State's witnesses testified they heard appellant reference Brown and the arson case while appellant attempted to run over Klutts with his vehicle. Klutts testified appellant threatened him and his family, and accused Klutts of "trying to get me on an arson case, you're lying on me." While Amanda Paxton was attempting to speak with appellant, he was "ranting and raving" about Klutts putting Brown in jail over an arson case in which Klutts was also involved. Finally, Timothy Macrides not only heard appellant threaten both Klutts and Paxton, but also heard appellant say "something about a fire job, you will never get me. * * * Something to do with this Brown guy and, you know, you will never get it to court and you will never prove it." Tr. at 223. Viewing the aforementioned testimony in a light most favorable to the prosecution, we find there is sufficient evidence from which the jury could find the essential elements of the crime of intimidation of a witness.
 {¶ 19} We now turn to appellant's assertion his conviction was against the manifest weight of the evidence. Appellant argues Klutts' testimony was embellished, exaggerated, and displayed a remarkably selective memory; therefore, was incredible. Appellant's argument implores this Court to substitute our judgment as to the credibility of the witnesses and testimony for that of the jury, which we will not do. In the case sub judice, the trier of fact was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Based upon the facts noted supra, we find there was sufficient, competent evidence to support appellant conviction of intimidation of a witness, and the same is not against the manifest weight of the evidence.
 {¶ 20} Appellants' first and second assignments of error are overruled.
 {¶ 21} The conviction of the Stark County Court of Common Pleas is affirmed.
Hoffman, J., Boggins, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the conviction of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.